*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERON ALLEN HUFFMAN-KING, also known as DERONE ALLEN HUFFMAN-KING,

        Defendant-Appellant.

UNPUBLISHED
June 20, 2019

No. 343205
Kalamazoo Circuit Court
LC No. 2000-001483-FC

Before: K. F. KELLY, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

In 2001, after being convicted by jury of first-degree murder, felony firearm, and carrying a concealed weapon during the robbery and murder of a stranger outside a liquor store, the trial court sentenced defendant, Deron Allen Huffman-King, a juvenile, to the mandatory sentence of life in prison without parole (LWOP). Following the United States Supreme Court's *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012) decision that held unconstitutional mandatory LWOP sentences for juveniles, the trial court resentenced defendant to 30 to 60 years' imprisonment for his murder conviction. Defendant appeals as of right his sentence on the grounds that the trial court failed to properly consider the *Miller* factors and based his new sentence on improper information derived from his presentence investigation report (PSIR). We affirm.

## I. STANDARDS OF REVIEW

We review for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We also review a trial court's response to a claim of inaccuracy for an abuse of discretion. *People v Uphaus* (On Remand), 278 Mich App 174, 181; 748 NW2d 899 (2008).

## II. ANALYSIS

Defendant first argues that the resentencing court did not consider the *Miller* factors in formulating his sentence and did not properly articulate the reasoning behind its sentence on the record. We disagree.

The principle of proportionality requires trial courts to impose sentences that are "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Skinner*, 502 Mich 89, 131-132; 917 NW2d 292 (2018) (citation omitted). A sentence that fulfills the principle of proportionality is reasonable. *People v Steanhouse*, 313 Mich App 1, 47-48; 880 NW2d 297 (2015), rev'd not in relevant part 500 Mich 453 (2017). In *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), our Supreme Court clarified that sentencing courts must justify their sentences to facilitate appellate review. "Legislatively mandated sentences are presumptively proportional and presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011) (citation omitted). The presumption is not irrebuttable, and it may be overcome if a defendant "present[s] unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000). A PSIR "is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003).

In *People v Wines*, 323 Mich App 343, 352; 916 NW2d 855 (2018), this Court concluded that "a failure to consider the distinctive attributes of youth, such as those discussed in *Miller*, when sentencing a minor to a term of years pursuant to MCL 769.25a, so undermines a sentencing judge's exercise of his or her discretion as to constitute reversible error." Sentencing courts should " 'balance' the following objectives: (1) reformation of the offender, (2) protection of society, (3) punishment of the offender, and (4) deterrence of others from committing like offenses." *Id.* at 351, citing *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972). This Court further concluded that

> there is no *constitutional* mandate requiring the trial court to specifically make findings as to the *Miller* factors except in the context of a decision whether to impose a sentence of life without parole. . . . [W]hen sentencing a minor convicted of first-degree murder, when the sentence of life imprisonment without parole is not at issue, the court should be guided by a balancing of the *Snow* objectives and in that context is required to take into account the attributes of youth, such as those described in *Miller*. [*Wines*, 323 Mich App at 352.]

In *Skinner*, 502 Mich at 114-116, our Supreme Court stated:

> The following are the factors listed in *Miller*: (1) his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional; (3) the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him; (4) whether he might have been charged

[with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys; and (5) the possibility of rehabilitation . . . . It is undisputed that all of these factors are mitigating factors.

\* \* \*

The Sixth Amendment does not prohibit trial courts from considering mitigating circumstances in choosing an appropriate sentence because the consideration of mitigating circumstances does not expose a defendant to a sentence that exceeds the sentence that is authorized by the jury's verdict. In other words, the Sixth Amendment only prohibits fact-finding that increases a defendant's sentence; it does not prohibit fact-finding that reduces a defendant's sentence. Therefore, the requirement in MCL 769.25(6) that the court consider the *Miller* factors does not violate the Sixth Amendment. [Quotation marks and citations omitted.]

Defendant argues that his rehabilitation, education, self-reformation, faith, and youth at the time of the crime render his sentence disproportionate. We disagree.

The record reflects that the trial court considered defendant's objections to the PSIR and made appropriate corrections. The trial court made clear that it understood that the PSIR stated the writer's interpretation of the offense and permitted the prosecution and defense counsel to express their positions on that interpretation. The trial court also gave defendant an opportunity to address the court. Defendant expressed his remorse for his actions that led to the victim's death. He informed the trial court that, at the time of the offense, his actions when 17 years old arose from his childish and immature nature. Defendant explained the changes he had made in his life since his incarceration as a juvenile. Defense counsel argued that under *Miller* and *Montgomery v Louisiana*, ___ US ___; 136 S Ct 718; 193 L Ed2d 599 (2016), the trial court should sentence defendant to time served or the statutory minimum because of his exemplary prison record, education, and religious faith, all of which established that defendant had changed his life and no longer constituted the impetuous youth that he was when he committed the offense. Defense counsel argued that the trial court should focus on defendant's rehabilitation and not on the crime. Defense counsel also provided a sentencing memorandum that the trial court took into consideration before imposing its sentence.

Defendant's minimum sentence of 30 years fell within the statutory minimum sentence range of 25 years to 40 years specified by MCL 769.25a(4)(c). Defendant's minimum sentence, therefore, is presumptively proportionate and reasonable. Additionally, the 25 to 40 years specified by the Legislature in MCL 769.25a(4)(c) takes into consideration the offender's youth at the time of the crime. The Department of Corrections (DOC) and the prosecutor both recommended sentencing defendant to 40 to 60 years' imprisonment. The record reflects that the trial court imposed a lesser minimum sentence than recommended by the DOC and prosecutor in recognition of defendant's personal background, family history, youth when he committed the offense, his family's deficiencies, and his efforts at personal improvement and rehabilitation. Accordingly, the trial court imposed a proportionate sentence and did not abuse its discretion.

Defendant next argues that the resentencing court did not make a sufficient record for appellate review of its reasons at sentencing. We disagree.

In this case, the record reflects that the trial court provided a detailed articulation of its reasons for its sentencing decision. The record indicates that the trial court reviewed everything submitted to it for consideration including defense counsel's extensive presentencing memorandum outlining the *Miller* factors, defendant's rehabilitation efforts, and upbringing. The trial court discussed the factors that it considered important when sentencing defendant and complied with *Miller* and *Snow*. The trial court considered the objectives of protection of society, punishment of the offender, and reformation/youth of the offender. The court discussed defendant's youth, troubled upbringing, and prison records of his parents, but also defendant's shocking murder of an innocent victim who died from two shots in the back. The trial court acknowledged defendant's positive efforts at rehabilitation and declined to impose the recommended sentence, choosing instead a sentence on the lower end of the statutory minimum range. The record reflects that the trial court appropriately balanced the *Snow* objectives and the *Miller* factors in sentencing defendant. Therefore, the trial court did not abuse its discretion.

Defendant next argues that the trial court abused its discretion by relying on factually inaccurate, subjective statements in the PSIR. We disagree.

In *People v Miles*, 454 Mich 90, 97; 559 NW2d 299 (1997), our Supreme Court stated that presentence reports are "integral to sentencing" and "are intended to insure that the punishment is tailored not only to the offense, but also the offender." A PSIR should include the DOC agent's description of the offense and the circumstances surrounding it. MCR 6.425(A)(1)(b). If the defendant wishes to give his or her version of the events, that version must be included as well. MCR 6.425(A)(1)(h).

At sentencing, either party may challenge the accuracy or relevancy of any information contained in the presentence report. MCL 771.14(6); MCR 6.425(E)(1)(b); *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009). The information is presumed to be accurate, and the defendant has the burden of going forward with an effective challenge. *Lloyd*, 284 Mich App at 705. However, once the defendant challenges the factual accuracy of information in the report, the sentencing court has a duty to resolve the challenge, and the prosecutor bears the burden of proving the fact by a preponderance of the evidence. *Id*.

In this case, defendant raised several challenges to the PSIR prepared by the DOC. The trial court addressed each challenge and agreed to amend the PSIR in several ways. Defendant requested that the trial court amend some factual statements for accuracy and strike other statements. The trial court noted that the PSIR referenced the police report, and the original PSIR submitted at defendant's original sentencing did not. When asked for an explanation why defense counsel took issue with the description of the offense, defense counsel lacked knowledge whether the contents were consistent with the police report that stated information about the murder and admitted that she had not reviewed the police report. The trial court declined to make a change. Defendant also took issue with the way the PSIR described where the victim died. The trial court agreed to amend the description to defendant's satisfaction. Defendant also objected on the grounds that some statements were inflammatory or inappropriately speculated about defendant's mental state during the commission of the offense. The trial court declined to

strike the DOC agent's statement regarding defendant's mental state because it understood that the statement merely represented the agent's opinion and interpretation of the facts for purposes of leading to the DOC's recommendation. The trial court agreed to parenthetically state in the PSIR that defendant objected to the DOC agent's characterization of his mental state. The trial court sought from defendant a specific indication as to defendant's objection and whether the objection challenged the facts' accuracy. The record reflects that defense counsel lacked knowledge as to the facts. The trial court, therefore, denied defendant's request to strike the statement that defendant sought the contents that the victim possessed.

Defendant next challenged the PSIR's statement that defendant fired two rounds into the victim's back "out of spite, anger, or some other reason." The trial court denied the request to strike the statement because it provided a statement of alternative rationales for the shooting and did not definitively ascribe a singular reason. Defendant also requested to strike the statement that defendant decided to end the victim's life when he refused to comply with defendant's wishes. The trial court acknowledged defendant's objection but denied the request because the statement merely reflected the PSIR writer's position to support the DOC's sentencing recommendation. Last, defendant took issue with the statement that defendant's shooting of the victim constituted a callous, cold-blooded act. The trial court declined to strike the statement because it reflected the writer's interpretation of the facts.

The record reflects that the trial court understood and articulated its recognition that the writer of the PSIR expressed subjective interpretations of the facts and indicated that the trial court had no confusion separating the facts and the writer's interpretative gloss. The trial court's ruling establishes that the trial court did not rely on inaccurate information or the PSIR writer's subjective statements. The record reflects that the trial court knew the underlying facts and circumstances that the jury considered and relied upon to convict defendant of first-degree murder. The trial court also considered the *Miller* factors. The trial court considered the original PSIR, an updated PSIR, and defendant's version of the events. The court heard and resolved all of the defendant's challenges to the PSIR. Defendant's arguments that the trial court failed to resolve the errors, therefore, lacks merit. The trial court did not abuse its discretion.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ James Robert Redford